**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

IN RE:                                      }
                                            }
HOPE Y. CHI-MILLS,                          }        CASE NO. 16-01302-DSC-7
                                            }        CHAPTER 7 CASE
                                            }
                                            }
        DEBTOR(S).                          }

## NOTICE OF INTENT AND MOTION FOR AUTHORITY TO SELL COMMERCIAL REAL PROPERTY FREE AND CLEAR OF ALL LIENS, INTERESTS OR OTHER ENCUMBRANCES BY PRIVATE SALE

COMES NOW André M. Toffel, the duly appointed Trustee in the above-styled case and gives notice, pursuant to the Federal Rules of Bankruptcy Procedure 2002(a)(2), 2002(c)(1) and 6004, of his intent to sell certain property free and clear of liens, interests and/or other encumbrances pursuant to Title 11 United States Code Section 363(b), as described below, and moves this Honorable Court for an Order authorizing the Trustee to sell the property and as grounds for said motion, states the following:

### PROPERTY TO BE SOLD

1. The Trustee proposes to sell all of the estate's right, title, and interest in a parcel of real property that consists of a commercial lot off Highway 119 in Alabaster, Alabama Shelby County Alabama, with Parcel ID #23-1-11-3-001-007.028 to **Steven J. Owen, Inc., for $9,500.00, plus the payment of all advalorem taxes, in the approximate amount of $3,000.00.** See the attached Exhibit A for legal description. The Sales Contract is attached as Exhibit B:

### TERMS AND CONDITIONS OF SALE

2. The Trustee proposes to sell the property "as is" and free and clear of any and all liens, interests and/or other encumbrances by **Private Sale** on or about the 15th day after the Order approving same.

3. The Trustee is informed and believes that the above described real property is owned by the Debtor and is subject to the mortgage of United Security Bank, who has consented to the sale, based upon the following agreement as to proceeds from the sale:

   The Bank will receive $6,000.00 of the sale proceeds, and the Bankruptcy Estate will receive the remaining $3,500.00. If there are any other higher bids for this property, any such bid to qualify, shall have to be in excess of $12,500.00. If there is such a bid, the agreement between United Security Bank and the Trustee is that any amount higher than $12,500.00 shall be split 50/50 between them. The Trustee is not aware of any other liens or encumbrances against this property.

4. The real property is being sold as is, where is, with no warranties or guarantees at all, except as are authorized by the Bankruptcy Court.

5. Any objections to the sale shall be filed on or before five (5) days before the date scheduled on the attached Notice of Hearing. Any objection shall state specifically why the sale should not be consummated. Unless a timely objection is filed and/or made at the time of the hearing, the sale shall take place as scheduled, or on such different terms as the Court may see fit to impose.

6. Pursuant to Bankruptcy Rules 2002, 6004 and 9006, the Trustee hereinbelow will give not less than twenty-three (23) days notice of the present Notice of Intent to Sell Assets Subject to all Liens and Encumbrances by mailing a copy of the same, along with the Notice of Hearing, to the persons and entities at the respective addresses shown on the certified matrix provided to him by the Clerk of the Bankruptcy Court, and will certify same by filing a Certificate of Notice of Mailing with the Bankruptcy Court.

## LIENS AGAINST PROPERTY

7. All liens, interests and/or encumbrances shall attach to the proceeds of such sale to the same extent and with the same priority as said liens, interests and/or encumbrances presently attach to the subject property. The Trustee reserves the right to contest the validity, priority and/or extent of any such claim, lien or other interest. It should be noted that an "any purchaser" title binder ordered by the Trustee is attached hereto and incorporated herein by reference as Exhibit C. The title binder shows only the mortgage of United Security Bank.

8. At closing, based upon the sale as proposed herein, United Security Bank shall receive $6,500.00, and the Bankruptcy Estate shall receive the balance, meaning that any closing costs, other than the payment of advalorem taxes, shall be paid out of the proceeds to be received by the Bankruptcy Estate. As is stated above, any offers higher than the one proposed herein, will result in that higher amount being divided 50/50 between United Secutiry Bank and the Bankruptcy Estate.

9. 11 U.S.C. Section 363 is satisfied in that the mortgage holder, United Secutiry Bank, has consented to the said sale, and the sale will result in proceeds to be received by the Bankruptcy Estate over and above the payment to United Security Bank.

10. IF YOU CLAIM A LIEN ON OR AN INTEREST IN ANY OF THE PROPERTY WHETHER OR NOT IT IS SET FORTH HEREIN ABOVE, YOU SHOULD IMMEDIATELY MAKE SUCH LIEN OR INTERERST KNOWN TO THE TRUSTEE AND THE COURT. THIS PROPOSED SALE MAY AFFECT YOUR RIGHTS UNDER TITLE 11 UNITED STATES CODE SECTION 363.

**WHEREFORE,** upon the above stated premises, Trustee moves this Honorable Court:

A.     To order and direct that service of this Notice and Motion be made in accordance with the Federal Rules of Bankruptcy Procedure 9014 on all parties in interest;

B.     To order the date, time and place of the hearing on this Notice and Motion to Sell Property of the estate and the time within which objections to said Notice and Motion shall be filed and served upon the Trustee;

C.     At such hearing, issue an Order authorizing the private sale free and clear of all liens, interests, and/or other encumbrances as proposed above and grant the Trustee the authority to execute any instruments necessary or ordered by the Court to effectuate the transfer of the real property described above;

D.     Order that if there is a dispute among the lienholders or Trustee on the Property as to the validity, amount, or priority, of any such lien or claim, such sale is approved and confirmed on the basis requested, and the Trustee is directed to hold the net proceeds, subject to payment upon proper application for professional fees and other administrative expenses pursuant to Title 11 United States Code Sections 330, 506, 724 or any other applicable code sections and to bring an adversary proceeding to resolve said disputes.  This right is reserved notwithstanding any other provision of this Order.

E.     Grant such other, further and different relief as may be necessary to effectuate the sale of the assets.

Dated this the  5th  day of September, 2018.

Andre' M. Toffel, as Trustee

Andre' M. Toffel, Attorney for Trustee

**OF COUNSEL:**
André M. Toffel, P.C.
450A Century Park South, Ste. 206A
Birmingham, Alabama 35226
(205) 252-7115

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the above Notice/Motion has been served on all parties requesting notice by electronic mail and/or by placing a copy of same in the U.S. Mail, first-class postage prepaid and properly addressed to parties on the mailing matrix of the case on this the  5th  day of September, 2018.

OF COUNSEL

## EXHIBIT "A"

Commencing at a rebar and the Southeast corner of the Southwest Quarter of Section 11, Township 21 South, Range 3 West, Shelby County, Alabama; thence North 87 degrees 3 minutes 27 seconds West for a distance of 895.60 feet to the Point of Beginning; thence North 87 degrees 13 minutes 27 seconds West a distance of 48.78 feet to a capped iron; thence North 22 degrees 02 minutes 49 seconds East a distance of 333.70 feet to a point; thence North 27 degrees 18 minutes 47 seconds East a distance of 210.00 feet to a capped iron; thence North 62 degrees 40 minutes 14 seconds West a distance of 141.80 feet to a capped iron; thence North 27 degrees 09 minutes 48 seconds East a distance of 15.00 feet to a capped iron; thence South 62 degrees 40 minutes 14 seconds East a distance of 159.84 feet to a capped iron; thence South 27 degrees 18 minutes 47 seconds West a distance of 225.00 feet to a capped iron; thence South 62 degrees 41 minutes 13 seconds East a distance of 65.00 feet to a capped iron; thence South 27 degrees 18 minutes 47 seconds West a distance of 116.16 feet to a capped iron; thence North 69 degrees 16 minutes 34 seconds West a distance of 8.05 feet to a capped iron; thence South 27 degrees 18 minutes 47 seconds West a distance of 194.95 feet to the Point and Place of Beginning.

Less and Except:  Commencing at a capped iron set at the Northeast corner of the Northwest 1/4 of Section 14, Township 21 South, Range 3 West, Shelby County, Alabama; thence North 87 degrees 10 minutes 30 seconds West a distance of 344.93 feet to a capped iron found (9049); thence North 87 degrees 13 minutes 27 seconds West a distance of 550.64 feet to a capped iron set; thence North 27 degrees 18 minutes 47 seconds East a distance of 194.95 feet to a capped iron set; thence North 69 degrees 16 minutes 34 seconds West a distance of 8.05 feet to a capped iron set; thence North 27 degrees 18 minutes 47 seconds East a distance of 116.16 feet to a capped iron set; thence North 62 degrees 41 minutes 13 seconds West a distance of 65.00 feet to a capped iron set; thence North 27 degrees 18 minutes 47 seconds East a distance of 22.70 feet to a point, which is the point of beginning; thence North 27 degrees 18 minutes 47 seconds East a distance of 202.30 feet to a capped iron set; thence North 62 degrees 40 minutes 14 seconds West a distance of 159.84 feet to a capped iron set; thence South 27 degrees 09 minutes 48 seconds West a distance of 15.00 feet to a capped iron found (weygand); thence South 62 degrees 40 minutes 14 seconds East a distance of 141.80 feet to a point; thence South 27 degrees 19 minutes 01 seconds West a distance of 187.30 feet to a point; thence South 62 degrees 41 minutes 13 seconds East a distance of 18.01 feet to the point and place of beginning.

Exhibit B

# COMMERCIAL SALE AGREEMENT
Revised March 2008 (Previous forms obsolete)

**This is a legally binding contract. Seek competent advice prior to execution.**

August 30, 2018                           08/30/2018

Effective Date of Commercial Sale Agreement: ~~3-1-2018~~ AMT,TTee ("Effective SJo

Date")

SELLER: _Chi-mills Hope Trust_,

whose address is _Parcel ID: 23 111 3 001 007.028_ ("Seller")
See Attached described 1

hereby agrees to sell and

BUYER: _Steven J. Owen, Inc_,

whose address is _253 Oak Forest Trail, Pelham AL_ ("Buyer")

hereby agrees to purchase the following described real estate, together with all improvements thereon and appurtenances thereto ("Property") situated in the City of _Alabaster_, County of _Shelby_, Alabama, on the terms stated below:

**Address:**

**and Described as Follows:**

_Parcel ID: 23 111 3 001 007.028_

$9500.00

1. **THE PURCHASE PRICE** shall be    $ ~~7,025~~ , ("Purchase Price") payable as follows:    AMT,TTee SJo

   **EARNEST MONEY,** (see below)    $ _1,000_ ("Earnest Money")

   $8500.00

   **CASH** on closing this sale → $ ~~6,025~~ ("Closing Payment").

   ~~Back Taxes~~ not included    ~~2,025 Maximum~~)

   In addition, Buyer is to pay all ad valorem taxes, AMT, TTee SJo
   in the approximate amount of $3000.00.

The Birmingham Association of Realtors® is not engaged in rendering legal, accounting or other professional service. This form is published as a service to real estate professionals and an explanation of its various provisions should be obtained from the appropriate professional. Because of varying state and local laws, competent legal or other advice should be secured before using any form.

Copyright © Birmingham Association of REALTORS® 2011

Commercial Sale Agreement
   Page 1 of 8
1643925 v4

## 2. AGENCY DISCLOSURE:

The listing company is:_____*NA*_____.

The selling company is:_____*NA*_____.

The listing company is: (*Two blocks may be checked*) ☐ An agent of the Seller. ☐ An agent of the Buyer.

☐ An agent of both the Seller and Buyer and is acting as a limited consensual dual agent.
☐    Assisting the ☐ Buyer ☐ Seller (*check one or both*) as a transaction broker.

The selling company is: (*Two blocks may be checked*) ☐ An agent of the Seller. ☐ An agent of the Buyer.

☐ An agent of both the Seller and Buyer and is acting as a limited consensual dual agent.
☐    Assisting the ☐ Buyer ☐ Seller (*check one or both*) as a transaction broker.

Buyer's Initials    _____  _____                    Seller's Initials  _____  _____

## 3. CONDITION OF PROPERTY:
Neither Seller nor any Agent makes any representations or warranties of any kind regarding the condition of the Property except to the extent expressly and specifically set forth herein. Except as otherwise stated in this Agreement, Buyer accepts the Property in its present "**As Is**", "**Where Is**" condition.

## 4. BUYER'S INSPECTION PERIOD:

a.    Buyer shall have a period of _____*0*_____ days from the Effective Date ("Inspection Period") to arrange for financing (if applicable) and to determine, either personally or through or with a representative of Buyer's choosing, any and all conditions of the Property (including without limitation the condition of all improvements thereon) material to Buyer's decision to purchase the Property. This determination shall include, without limitation, Buyer satisfying itself as to title matters, survey matters, structural matters, zoning matters, subdivision restrictions, environmental matters, existing contracts and financial matters affecting the Property, all soil, landscaping and other physical conditions of the Property, availability and sufficient quantities of all utilities, and all additional matters that Buyer believes relevant, in its sole and absolute discretion, in determining whether or not to purchase the Property.

b.    If for any reason whatsoever Buyer is unable to obtain financing (if applicable) and/or determines that the Property is unsuitable for its purposes in its sole and absolute discretion, or decides for any other reason not to purchase the Property, then Buyer shall notify Seller in writing of its decision not to purchase the Property not later than the last day of the Inspection Period, at which time the Escrow Deposit shall be returned to Buyer, subject to the provisions contained in Section 5 hereof, and, except as to those matters that specifically survive termination pursuant to the terms hereof, this Agreement shall be null and void and neither party shall have any rights or obligations under this Agreement. If Buyer does not give written notice to Seller of its election to not purchase the Property prior to the expiration of the Inspection Period, then it is agreed that the Buyer shall be deemed to have obtained financing (if applicable) and shall be deemed to have approved the Property and the parties shall proceed to Closing as provided for herein, subject to the provisions of Section 7 and Section 8 herein.

c.    From the Effective Date until the Closing, Seller hereby grants to Buyer and its agents access to the Property in order to conduct reasonable investigations and tests as Buyer may desire, including, without limitation, environmental site assessments and structural, mechanical, electrical and other physical investigations of the Property. Seller agrees to cooperate with Buyer to provide relevant information concerning the Property in Seller's

*The Birmingham Association of Realtors® is not engaged in rendering legal, accounting or other professional service. This form is published as a service to real estate professionals and an explanation of its various provisions should be obtained from the appropriate professional. Because of varying state and local laws, competent legal or other advice should be secured before using any form.*

Copyright © Birmingham Association of REALTORS® 2011

possession upon written request therefore by Buyer in order to conduct such inspections and tests. Buyer shall coordinate all of its testing and investigations, and its agents' testing and investigations with Seller in order to insure the least amount of interference with Seller's operations. Buyer agrees to indemnify and hold Seller harmless against any claims for bodily injury, property damage and mechanics' liens arising out of any actions of Buyer or its agents or representatives on the Property in the course of such activities. Buyer also agrees to restore or repair any of the Property damaged or disturbed as a result of Buyer's exercise of its rights under this Agreement to as near as is reasonably possible to the condition that existed immediately prior to the exercise of such rights. Buyer's obligations to indemnify and hold Seller harmless under this paragraph shall survive Closing and any termination of this Agreement. Buyer's obligation under this subsection to restore the Property shall survive any termination of this Agreement, but shall not survive Closing.

## 5.  EARNEST MONEY & BUYER'S DEFAULT:

a.    Seller and Buyer hereby direct that _____ ("Escrow Agent") act as escrow agent and hold the Earnest Money in trust until this Agreement has been accepted and signed by all parties, at which time the Earnest Money will be promptly deposited into the escrow account of the Escrow Agent. During the Inspection Period Buyer may unilaterally and in its sole discretion cancel this Agreement and be refunded the Escrow Deposit. In the event that following the Inspection Period Buyer fails to carry out and perform the terms of this Agreement as a result of no fault of the Seller, the Earnest Money shall be forfeited to Seller as liquidated damages at the option of Seller, provided Seller agrees to the cancellation of this Agreement. If this Agreement does not close and the Earnest Money is to be turned over to Seller or refunded to Buyer pursuant to this Agreement, Seller and Buyer agree to execute a written release to the Escrow Agent affirming the proper disposition of the Earnest Money. In the event both Seller and Buyer claim the Earnest Money, or either Seller or Buyer refuses or fails to execute a release, the Escrow Agent may interplead the disputed portion of the Earnest Money into a court located in the county where the Property is located, and shall be entitled to deduct or recover from the Earnest Money its court costs, reasonable attorney fees and other out-of-pocket expenses relating to the interpleader. In the event that the Earnest Money is not received and verified as good and sufficient funds within _____ days of the Effective Date, Seller shall have the right to void this Agreement upon notice to Buyer, and upon the exercise of such right, this Agreement shall be void and neither party shall have any further obligation to the other. Furthermore, when the Earnest Money is a check and the check is returned by a financial institution as unpaid, Seller shall have the right to void this Agreement upon notice to Buyer, and upon the exercise of such right, this Agreement shall be void and neither party shall have any further obligation to the other.

b.    Buyer and Seller, jointly and severally, agree to indemnify, defend and hold harmless the Escrow Agent from and against any and all losses, costs (including, without limitation, reasonable attorneys' fees), damages, expenses, and claims suffered or incurred by Escrow Agent in connection with or arising from or out of the Escrow Agent serving as an escrow agent under this Agreement.

**6.  CONVEYANCE:**  Seller agrees to convey the Property to Buyer by ~~General~~ *Trustee's* AMT, Trustee ~~warranty~~ deed, free and clear of all encumbrances except for the "Permitted Exceptions" as herein set forth. The Property is sold and is to be conveyed subject to: (i) mineral and mining rights not owned by Seller; (ii) existing leases and tenant escrow deposits that are to be transferred to Buyer, subject to any present management and or rental commission agreements thereon; (iii) other existing binding agreements provided by Seller within _____ days of the Effective Date; and (iv) other survey matters and title matters as specifically identified as "Permitted Exceptions" herein (collectively referred to as the "Permitted Exceptions").

*(margin note: AMT, Trell SJo)*

## 7.  TITLE INSURANCE:

a.    Seller shall provide, at ☐ Buyer's ☒ Seller's *(check one)* expense within _____ days after the Effective  *AMT, Trustee* Date a standard owner's title insurance commitment for the issuance of an owner's title insurance policy by **NAME**  *SJo*

*The Birmingham Association of Realtors® is not engaged in rendering legal, accounting or other professional service. This form is published as a service to real estate professionals and an explanation of its various provisions should be obtained from the appropriate professional. Because of varying state and local laws, competent legal or other advice should be secured before using any form.*

Copyright © Birmingham Association of REALTORS® 2011

**OF TITLE COMPANY:** ~~Jefferson Title~~ *First American Title Insurance Company* ("Title Company") in the amount of the Purchase Price showing fee simple title to the Property to be in Seller, together with the documents relating to exceptions to title referred to therein ("Title Commitment"). Buyer shall notify Seller of any unacceptable liens, encumbrances, restrictions, or other defects or matters ("Title Objections") on or before the expiration of the Inspection Period. In the event that Buyer fails to notify Seller of any Title Objections within said time period, Buyer shall be deemed to have accepted such title and all matters contained therein shall be deemed to be "Permitted Exceptions". In the event that Buyer does provide Title Objections within said time period, within five (5) days following Buyer's delivery of the Title Objections, Seller shall elect (by written notice to Buyer) to cure or decline to correct such Title Objections. If Seller advises Buyer that Seller is unwilling or unable to correct any or all Title Objections or if Seller fails to respond, within five (5) days thereafter, Buyer may elect to terminate this Agreement by giving written notice to Seller, at which time the Earnest Money shall be returned to Buyer subject to the provisions contained in Section 5 hereof. In the event that Buyer fails to provide such notice during such time, Buyer shall be deemed to have accepted such title and such matters shall be deemed to be "Permitted Exceptions".

*[handwritten margin: AMT, Jtee SJ0]*

b.    At Closing, ☐ Buyer ☑ Seller *(check one)* shall pay for the owner's title insurance policy ("Owner's Policy") to be issued by the Title Company pursuant to the Title Commitment which shall contain references to the Permitted Exceptions.

*[handwritten margin: AMT Jtee SJ0]*

**8.  SURVEY:**  Within five (5) days of the Effective Date, Seller shall provide, at its expense, any existing surveys of the Property which the Seller has in its possession. During the Inspection Period, Buyer has the right to obtain a new survey of the Property, at its expense.

**9.  PRORATIONS:**  All items customarily prorated and adjusted in connection with the closing of real estate similar to the Property, including all ad valorem taxes, rents, operating expenses, insurance, and accrued interest on mortgages assumed, if any, are to be prorated between Seller and Buyer as of the Closing Date, and any advance escrow deposits held by Mortgagees shall be credited to Seller.  The cost of recording the deed shall be paid by the Buyer.  *Seller to give itemized amounts for purchasers*

*[handwritten margin: AMT, Jtee SJ0]*

**10. CLOSING & POSSESSION DATES:**  *approved.*

a.    The consummation of the sale transaction contemplated herein is referred to as the "Closing". The sale shall be closed and the deed delivered on or before   *November 1, 2018*   ~~June 1st 2018~~ except Seller shall have a reasonable length of time within which to perfect title or cure defects in the title of the Property, as provided for herein ("Closing Date").

*[handwritten margin: AMT, Jtee SJ0]*

b.    At the Closing, Seller shall deliver to Buyer:  *Clear title to be provided*

*[handwritten margin: AMT, Jtee SJ0]*

   (i)     A deed as provided for herein;
   (ii)    FIRPTA statements as required herein;
   (iii)   Litigation and lien affidavits executed by Seller, in such form as approved by Title Company;
   (iv)    Lien waivers executed by Seller, in such form as approved by the Title Company; and
   (v)     Such other documents and instruments as may be reasonably required to effectuate the Closing as herein contemplated.

c.    At the Closing, Buyer shall deliver to Seller:

   (i)     Currently available funds in the amount equal to the Closing Payment adjusted as provided herein, and

---

*The Birmingham Association of Realtors® is not engaged in rendering legal, accounting or other professional service. This form is published as a service to real estate professionals and an explanation of its various provisions should be obtained from the appropriate professional. Because of varying state and local laws, competent legal or other advice should be secured before using any form.*

Copyright © Birmingham Association of REALTORS® 2011

(ii)     Such other documents and instruments as may be reasonably required to effectuate the Closing as herein contemplated.

d.    Possession of the Property shall be given to Buyer on the Closing Date.

**11. DISCLAIMER:** Seller and Buyer acknowledge that they have not relied upon advice or representations of Agent (or Agent's associated salesperson(s)) relative to (i) the legal or tax consequences of this Agreement and the sale, purchase or ownership of the Property; (ii) the structural condition of the Property, including condition of the roof and basement; (iii) construction materials; (iv) the nature and operating condition of the electrical, heating, air conditioning, plumbing, water heating systems and appliances; (v) the availability of utilities or sewer service; (vi) the character of the neighborhood; (vii) the investment or resale value of the Property including projections of income or operating expenses; (viii) compliance requirements of the Americans with Disabilities Act; (ix) the existence of any hazardous or toxic waste, substance, or material, including without limitation any asbestos or any oil or pesticides; (x) any state of facts which would be disclosed by an accurate survey of the Property; or (xi) any other matters affecting their willingness to sell or purchase the Property on the terms and price herein set forth. Seller and Buyer have sought and obtained independent advice relative thereto.

**12. SELLER WARRANTS:** Seller warrants that unless excepted herein, Seller has not received notification from any lawful authority regarding any assessments, pending public improvements, repairs, replacements, or alterations to the Property that have not been satisfactorily made. Seller warrants that Seller is the fee owner of the Property or is authorized to execute this document for the fee owner. Seller also represents that, to the best of its knowledge, except as may otherwise be expressly disclosed herein, Seller has not released or disposed of any hazardous or toxic waste, substance or material, including without limitation any asbestos or any oil or pesticides (collectively, "Hazardous Substances"), on or about the Property; has not disposed of or arranged for the disposition of any Hazardous Substances from the Property except in compliance with all applicable federal, state or local laws; and no Hazardous Substances exist on the Property or about the Property that threaten the Property. Seller makes no warranty that the Property is suitable for any particular purpose, nor that the Property is in compliance with the requirements of the Americans with Disabilities Act. **THESE WARRANTIES SHALL SURVIVE THE DELIVERY OF THE DEED.**

**13. RISK OF LOSS:** Seller agrees to keep in force hazard insurance on the Property until this sale is closed and the deed is delivered. If the Property is destroyed or materially damaged between the Effective Date and the Closing Date, through no fault of the Buyer or its agents, and Seller is unable or unwilling to restore it to its previous condition prior to Closing, Buyer shall have the option of canceling this Agreement and receiving the Earnest Money or accepting the Property in its then condition. If Buyer elects to accept the Property in its damaged condition, any insurance proceeds otherwise payable to Seller by reason of such damage shall be applied to the balance of the purchase price or otherwise shall be payable to Buyer.

**14. HAZARDOUS SUBSTANCES:** Seller and Buyer expressly acknowledge that the Agent(s) have not made an independent investigation or determination with respect to the existence or nonexistence of asbestos, PCB transformers, or other toxic, hazardous or contaminated substances or gases in, or, or about the Property, or for the presence of underground storage tanks. Any such investigation or determination shall be the responsibility of Seller and/or Buyer and Agent(s) shall not be held responsible therefor.

**15. FOREIGN INVESTMENT IN REAL PROPERTY TAX ACT (FIRPTA):** At the Closing, Seller and Buyer shall comply with the FIRPTA and the regulations promulgated thereunder by the IRS.

**16. SELECTION OF ATTORNEY:** The parties hereto acknowledge and agree that, if they have agreed to share the fees of a closing attorney hereunder, such sharing of fees may involve a potential conflict of interest and they may be required to execute an affidavit at Closing acknowledging their recognition and acceptance of same. Each

*The Birmingham Association of Realtors® is not engaged in rendering legal, accounting or other professional service. This form is published as a service to real estate professionals and an explanation of its various provisions should be obtained from the appropriate professional. Because of varying state and local laws, competent legal or other advice should be secured before using any form.*

Copyright © Birmingham Association of REALTORS® 2011

Commercial Sale Agreement
1643925 v4

of the parties acknowledges that he has a right to be represented at all times in connection with this Agreement and the Closing by an attorney of his own choosing, at his own expense.

**17. ADDITIONAL PROVISIONS:** Any additional provisions set forth on the attached exhibits, and initialed by all parties, are hereby made a part of this Agreement.

**18. FACSIMILE AND COUNTERPART SIGNATURES:** This agreement may be executed in counterparts and by either party or by both parties by telecopy or facsimile and shall be binding upon the party so executing it upon receipt by the other party of the signature.

**19. NO ADDITIONAL BROKERS:** Buyer and Sellers represent and warrant to each other that there are no real estate brokers or agents or other persons owed any commission, finder's fee, or other compensation respecting the transaction contemplated herein, except for those parties specifically referenced herein.

**20. TIME IS OF THE ESSENCE:** The Parties agree that time is of the essence of this Agreement.

**21. NOTICE:** All notices, demands and/or consents provided for in this Agreement shall be in writing and shall be deemed to have been served on the date mailed by United States registered or certified mail, return receipt requested, with postage prepaid. All such notices and communications shall be addressed to the parties hereto at the respective addresses set forth at page 1 hereof, or at such other addresses as either may specify to the other in writing.

**22. 1031 EXCHANGE:** The parties acknowledge that either of them may elect to effect the disposition of the Property pursuant to this Agreement as a like-kind exchange pursuant to Section 1031 of the United States Internal Revenue Code (an "Exchange"). The parties agree to cooperate with one another in all respects in effecting such Exchange, including, without limitation, by executing and delivering such documents as may be customarily required in such exchange transactions, provided that the parties shall not be required to incur any expense or additional obligation in connection therewith.

**23. CONFIDENTIAL INFORMATION; INSPECTIONS:** Buyer shall use reasonable efforts to treat and hold all information furnished by Seller to Buyer in the course of Buyer's inspections and investigations of the Property as confidential information by Buyer and Buyer shall return all such information to Seller at Buyer's expense in the event the transaction contemplated by this Agreement does not close for any reason whatsoever. In addition, Buyer shall use reasonable efforts to treat and hold all reports, engineering studies, analyses and other documents and information resulting from investigations by Buyer, or any of its employees, agents or representatives obtained in the course of Buyer's inspections and investigations of the Property as confidential information and copies of all such documents shall be delivered to Seller at Seller's expense in the event the transaction contemplated by this Agreement does not close for any reason whatsoever.

**24. BIRMINGHAM ASSOCIATION OF REALTORS® ("BAR") DISCLAIMER, WAIVER AND RELEASE OF CLAIMS.** This provision, without any changes, modifications, deletions or revisions, must be included in all BAR form documents that include any reference to BAR. The parties hereto hereby acknowledge and agree that: (A) THIS DOCUMENT HAS IMPORTANT CONSEQUENCES, LEGAL, FINANCIAL AND OTHERWISE, AND BAR HAS ADVISED THE PARTIES THAT THEY SHOULD EACH CONSULT WITH AN ATTORNEY AND/OR OTHER PROFESSIONAL OF THEIR CHOICE WITH RESPECT TO THE TERMS HEREOF, AND/OR THE COMPLETION, MODIFICATION AND/OR EXECUTION OF, THIS DOCUMENT; (B) form documents by their nature are designed to be of specific general application, and may not be applicable to specific facts and circumstances, may not address given party's specific conditions or requirements, and/or may not reflect the relative bargaining or negotiations of the parties, as such variables may arise on any given transaction, (C) to avoid any possible misunderstanding or confusion as to the original form of this document and any revisions,

*The Birmingham Association of Realtors® is not engaged in rendering legal, accounting or other professional service. This form is published as a service to real estate professionals and an explanation of its various provisions should be obtained from the appropriate professional. Because of varying state and local laws, competent legal or other advice should be secured before using any form.*

Copyright © Birmingham Association of REALTORS® 2011

modifications or changes to it, any and all revisions, modifications or changes to the original form should be made readily apparent by highlighting, underscoring or other means to distinguish them from the original version; (D) BAR has made the original version of this document and other document forms available to BAR's members as a service, but makes no representation or warranty, expressed or implied, as to the suitability or applicability of the terms and conditions of, or the enforceability of, this document or other document forms; (E) BAR document forms are updated by BAR from time to time, and BAR recommends to the parties that they use the most current, updated version of any such document forms; and (F) by executing this document the parties hereto hereby waive and release BAR, its officers, directors, members, attorneys, employees, and agents, from any and all claims, demands, and/or causes of action (whether known or unknown) arising out of, pertaining to, or resulting directly or indirectly from the use of this form document.

**25. ENTIRE AGREEMENT:** This Agreement constitutes the entire agreement between Buyer and Seller regarding the Property, and supersedes all prior discussions, negotiations and agreements between Buyer and Seller, whether oral or written. Neither Buyer, Seller, Agent nor any other sales agent shall be bound by any understanding, agreement, promise, or representation concerning the Property, expressed or implied, not specified herein. Any further changes or modifications to this Agreement must be in writing and signed by the parties hereto.

**THIS AGREEMENT IS INTENDED TO BE A LEGALLY BINDING CONTRACT. IF YOU DO NOT UNDERSTAND THE LEGAL EFFECT OF ANY PART OF THIS AGREEMENT, SEEK LEGAL ADVICE BEFORE SIGNING.**

| | 08/30/2018 |
|---|---|
| _Connie Owen_ | _X_ _____ 03/01/18 |
| Witness to Buyer's Signature | Buyer (Date) |
| | |
| _____ | _____ |
| Witness to Buyer's Signature | Buyer (Date) |
| | _Andre M. Toffel, as Trustee_  Aug 30, 2018 |
| _____ | _____ |
| Witness to Seller's Signature | Seller (Date) |
| | |
| _____ | _____ |
| Witness to Seller's Signature | Seller (Date) |

**EARNEST MONEY:** Receipt is hereby acknowledged of the earnest money as hereinafter set forth;

_____ Cash  X  Check  $ 1000

Firm  _Andre Toffell Office_

BY: _Andre Toffell_

This sale shall be AS IS, WHERE IS, WITH NO WARRANTY    AMT, Tlee
EXCEPT AS TO TITLE, and shall be subject to approval
by the United States Bankruptcy Court.

Purchasers wife is an inactive licensed Alabama
realestate agent. (since 2008)    AMT, Tlec

The Birmingham Association of Realtors® is not engaged in rendering legal, accounting or other professional service. This form is published as a service to real estate professionals and an explanation of its various provisions should be obtained from the appropriate professional. Because of varying state and local laws, competent legal or other advice should be secured before using any form.

Copyright © Birmingham Association of REALTORS® 2011

Commercial Sale Agreement
    Page 7 of 8
1643925 v4

**COMMISSION:** THE COMMISSION PAYABLE TO THE AGENT(S) IN THIS SALE IS NOT SET BY THE BIRMINGHAM ASSOCIATION OF REALTORS®, INC., BUT IN ALL CASES IS NEGOTIABLE BETWEEN THE AGENTS(S) AND THE CLIENT.

In this Agreement ☐ Seller ☐ Buyer (*check one or both*) agrees to pay to _____, Agents(s) in this transaction, in CASH at Closing, a commission in the amount of _____ of the total purchase price.

_____
Seller/Buyer

_____
Seller/Buyer

_____
Broker/Agent

_____
Broker/Agent

*The Birmingham Association of Realtors® is not engaged in rendering legal, accounting or other professional service. This form is published as a service to real estate professionals and an explanation of its various provisions should be obtained from the appropriate professional. Because of varying state and local laws, competent legal or other advice should be secured before using any form.*

Copyright © Birmingham Association of REALTORS® 2011

HCU # = 58230111 300 1007028
Chi-millsHope

March for
16 Taxes
$982.08

Described (1)

9378 Hwy 119
Alabaster, AL

Steven J. Owen, Inc

180 ROW

COMMON AREA
W/ RETENTION POND

N

**Owner Information**
Tax Year: 2017
STATE OF ALABAMA
MONTGOMERY, AL 36130
Parcel Number: 23 1 11 3 001 007.028
**Site Information**
Municipal Code: 2
School District: 2
Subdivision:
Primary Lot:
Secondary Lot:
Block:
Section: 11
Township: 21S
Range: 03W
Map Book: 0
Map Page: 0
Lot Dimension 1: 333.7
Lot Dimension 2: 48.78
Acres: 0.48
Sq Ft: 20908.8
Description: COM SE COR SW1/4 SEC 11 W895.6 TO
POB W48.78 NE356.4 SE18.01 SW22.7 SE65 SW11 6.16
NW8.05 SW194.95 TO POB

132 acre .011

Andr
Toffy
trust

Shelby County Land Information
Date Printed:

Use this item at your own risk. Accuracy is not guaranteed for any reason. The material and information contained in this document is provided for general information only and should not be used for Legal, Engineering or Surveying
purposes. Shelby County specifically disclaims all warranties, express or implied regarding this document. Shelby County is not liable and/or responsible for the consequences caused by or related to, in any way, the actions take or
not take in reliance on this document.

HOPE MILLS
1743 COSATT TRAIL

405A Century Park S )
STE 206 A

*Acct # 5823011300 1007028*



APPLICATION FOR REDEMPTION OF LANDS SOLD
FOR TAXES –
SOLD TO STATE
Under Provisions of Title 40-10-121 Code of Alabama
1975

*Described (2)*

PARCEL ID: 23 1 11 3 001 007.028   DATE OF INQUIRY:  08/13/18

| | | | |
|---|---|---|---|
| YEAR: 2016 | MUN CODE: | 02 | FIRE DIST: N/A |
| | ASSESSED VALUE: 16,740 | | CLASS: 02 |
| CHI - MILLS HOPE | DATE SOLD: | 03/27/17 | PER DIEM: 0.62 |
| 138 COSHATT TRL | REDEEMED BY: | | |
| BIRMINGHAM AL 35244 | | | |

C/S: 01 17 5735                                    APPROX. LOCATION:

LEGAL: COM SE COR SW1/4 SEC 11 W895.6 TO POB W48.78 NE356.4 SE18.01 SW22.7 SE65
SW116.16 NW8.05 SW194.95 TO POB

| YEAR | TAX | INTEREST | TOTAL TAX |
|---|---|---|---|
| 2016 | 982.08 | 168.54 | 1,150.62 |
| 2017 | 903.96 | 72.22 | 976.18 |
| 2018 | 903.96 | 0.00 | 903.96 |

| | |
|---|---|
| REDEMPTION FEES: | 2.50 |
| TOTAL: | 3,033.26 |

STATE OF ALABAMA
SHELBY COUNTY

Cash or certified funds only.

To the Honorable **DON ARMSTRONG**, PROPERTY TAX COMMISSIONER of SHELBY COUNTY,
Alabama. The undersigned, your petitioner, who is the owner of above referenced property or owner of
a redemptioner's interest in property desires to redeem from a Tax Sale made by the PROPERTY TAX
COMMISSIONER of SHELBY COUNTY, Alabama. Wherefore, your petitioner prays that your Honor
will issue to him a Certificate of Redemption for the above described property, as provided by law.

|        To be completed by AGENT        |        To be completed by OWNER        |
|---|---|
| OWNER'S NAME _____ | OWNER'S NAME _____ |
| (PRINTED) | (PRINTED) |
| MAILING | MAILING |
| ADDRESS _____ | ADDRESS _____ |
| CITY/ST/ZIP _____ | CITY/ST/ZIP _____ |
| AGENT _____ | SIGNATURE _____ |
| COMPANY _____ | PHONE _____ |

Exhibit C

 *First American Title™*

| Title Insurance Commitment |
| --- |
| ISSUED BY |
| **First American Title Insurance Company** |

# Commitment

---

**INFORMATION**

The Title Insurance Commitment is a legal contract between you and the Company. It is issued to show the basis on which we will issue a Title Insurance Policy to you. The Policy will insure you against certain risks to the land title, subject to the limitations shown in the Policy.

The Company will give you a sample of the Policy form, if you ask.

The Policy contains an arbitration clause. All arbitrable matters when the Amount of Insurance is $2,000,000 or less shall be arbitrated at the option of either the Company or you as the exclusive remedy of the parties. You may review a copy of the arbitration rules at http://www.alta.org/.

The Commitment is based on the land title as of the Commitment Date. Any changes in the land title or the transaction may affect the Commitment and the Policy.

The Commitment is subject to its Requirements, Exceptions and Conditions.

THIS INFORMATION IS NOT PART OF THE TITLE INSURANCE COMMITMENT. YOU SHOULD READ THE COMMITMENT VERY CAREFULLY.

If you have any questions about the Commitment, contact:
**FIRST AMERICAN TITLE INSURANCE COMPANY**
**1 First American Way, Santa Ana, California 92707**

**TABLE OF CONTENTS**

| | |
| --- | --- |
| AGREEMENT TO ISSUE POLICY | 1 |
| CONDITIONS | 2 |
| SCHEDULE A | Insert |
|    1. Commitment Date | |
|    2. Policies to be Issued, Amounts and Proposed Insureds | |
|    3. Interest in the Land and Owner | |
|    4. Description of the Land | |
| SCHEDULE B-I – REQUIREMENTS | Insert |
| SCHEDULE B-II – EXCEPTIONS | Insert |

---

**AGREEMENT TO ISSUE POLICY**

We agree to issue policy to you according to the terms of the Commitment. When we show the policy amount and your name as the proposed insured in Schedule A, this Commitment becomes effective as of the Commitment Date shown in Schedule A.

If the Requirements shown in this Commitment have not been met within six months after the Commitment Date, our obligation under this Commitment will end. Also, our obligation under this Commitment will end when the Policy is issued and then our obligation to you will be under the Policy.

Our obligation under this Commitment is limited by the following:
- The Provisions in Schedule A.
- The Requirements in Schedule B-I.
- The Exceptions in Schedule B-II.
- The Conditions on Page 2.

This Commitment is not valid without SCHEDULE A and Sections I and II of SCHEDULE B.

**First American Title Insurance Company**

*Dennis J. Gilmore*
Dennis J. Gilmore
President

*Jeffrey S. Robinson*
Jeffrey S. Robinson
Secretary

(This Commitment is valid only when Schedules A and B are attached)    This jacket was created electronically and constitutes an original document

Copyright 2006-2009 American Land Title Association. All rights reserved. The use of this form is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.

## CONDITIONS

1. **DEFINITIONS**

   (a) "Mortgage" means mortgage, deed of trust or other security instrument. (b) "Public Records" means title records that give constructive notice of matters affecting your title according to the state statutes where your land is located.

2. **LATER DEFECTS**

   The Exceptions in Schedule B – Section II may be amended to show any defects, liens or encumbrances that appear for the first time in the public records or are created or attached between the Commitment Date and the date on which all of the Requirements (a) and (c) of Schedule B – Section I are met. We shall have no liability to you because of this amendment.

3. **EXISTING DEFECTS**

   If any defects, liens or encumbrances existing at Commitment Date are not shown in Schedule B, we may amend Schedule B to show them. If we do amend Schedule B to show these defects, liens or encumbrances, we shall be liable to you according to Paragraph 4 below unless you knew of this information and did not tell us about it in writing.

4. **LIMITATION OF OUR LIABILITY**

   Our only obligation is to issue to you the Policy referred to in this Commitment, when you have met its Requirements. If we have any liability to you for any loss you incur because of an error in this Commitment, our liability will be limited to your actual loss caused by your relying on this Commitment when you acted in good faith to:

   Comply with the Requirements shown in Schedule B – Section I

   or

   Eliminate with our written consent any Exceptions shown in Schedule B – Section II.

   We shall not be liable for more than the Policy Amount shown in Schedule A of this Commitment and our liability is subject to the terms of the Policy form to be issued to you.

5. **CLAIMS MUST BE BASED ON THIS COMMITMENT**

   Any claim, whether or not based on negligence, which you may have against us concerning the title to the land must be based on this Commitment and is subject to its terms.

TITLE INSURANCE COMMITMENT

BY

## *First American Title Insurance Company*

### SCHEDULE A

1. Commitment Date: **February 13, 2018, 08:00 am**

2. Policy (or Policies) to be issued:                                   POLICY AMOUNT

   (a)  Owner's Policy

         Proposed Insured:  **TBD**

   (b)  Loan Policy

         Proposed Insured:

   (c)  Proposed Insured:

3. **Fee Simple** interest in the land described in this Commitment is owned, at the Commitment Date, by **Hope Chi-Mills by deed dated January 31, 2011 and filed February 2, 2011 in Instrument No. 20110202000036920**

   **24-month chain of title shown above (provided for informational purposes only)**

4. The land referred to in the Commitment is described as follows:

   **SEE ATTACHED EXHIBIT "A"**

   Countersigned
   Reli Settlement Solutions, LLC, Ala Lic #438226

   By _____ #02-0165

# TITLE INSURANCE COMMITMENT

BY

## *First American Title Insurance Company*

### SCHEDULE B - SECTION I

### REQUIREMENTS

The following requirements must be met:

(a) Pay the agreed amounts for the interest in the land and/or according to the mortgage to be insured.

(b) Pay us the premium, fees and charges for the policy.

(c) Documents satisfactory to us creating the interest in the land and/or the mortgage to be insured must be signed, delivered and recorded:

   1. **This binder has been prepared for your office for informational purposes only, pending receipt of further information on your part. Upon receipt of said information a revised commitment for title insurance may be issued. Reli Settlement Solutions, LLC reserves the right to make additional requirements and/or exceptions to this binder or decline to insure subject property upon receipt of same. Statement to the contrary not withstanding, this binder is not to be construed as a final commitment to provide title insurance for the property described in Schedule A.**

   2. **NOTICE TO CUSTOMER: This limited title search is being made at the request of W. Eric Pitts, LLC; said search being solely for the benefit of said party. This report is not to be construed as evidence of either status or condition of title, but is only a report as matters appearing in the public records, as shown in the Office of the Judge of Probate, Tax Assessor, and Tax Collector, during the period of time searched. Maximum liability of Reli Settlement Solutions, LLC hereby shall not exceed the charge made and paid for this report. This report is not to be construed as an opinion of title, title guarantee, or title insurance policy.**

(d) You must tell us in writing the name of anyone not referred to in this Commitment who will get an interest in the land or who will make a loan on the land. We may then make additional requirements or exceptions.

(e) If any endorsements are requested, we require that we are informed of such requests prior to date of closing. Furthermore, we reserve the right to add any additional requirements which are necessary to issue such endorsements.

(f) NOTICE TO CLOSING AGENT: If you are closing a loan required herein based on an Equity Line Mortgage Pay-Off Letter, you must determine that the account is frozen and no further advances will be made. You must have a release in hand or adequate assurances that the release is immediately forthcoming. We will require a copy of the release or your assurance that the release is forthcoming.

(g) An affidavit and indemnity from the vested title holder herein that there are no judgments, proceedings or liens which attach to the property; no leases or other parties in possession of the property; and no recent improvements on the property for which the contractors have not been paid. (Seller/Owner Affidavit to be provided by Title Company.)

(h)  Delivery of the Company's Privacy Policy Notice.

(i)  In addition we require the following:

1. The Company finds that the deed recorded in Instrument NO. 20110202000036920 does not contain the "less and except" legal description which was previously conveyed in Instrument No. 20070327000138210. Thus, we require a corrective deed to be properly executed and filed in the Probate Office of Shelby County, Alabama.

2. Payment and satisfaction of that mortgage from Hope Yuan Chi Mills aka Hope Chi-Mills to First United Security Bank in the amount of $50,000.00, dated 2/22/2011, and recorded 5/23/2011, in Instrument No. 20110523000153390. NOTICE TO CLOSING AGENT: If you are closing based on an Equity Line Mortgage Pay-Off Letter, you must determine that the account is frozen and no further advances will be made. You must have a release in hand or adequate assurances that the release is immediately forthcoming. We will require a copy of the release or your assurance that the release is forthcoming.

3. We will require proof that Hope Chi-Mills, are not one and the same as Hope Yuan Chi-Mills ***-**-0666, who filed a petition in Bankruptcy Court under Chapter 7 of the Bankruptcy Code, said petition being dated 3/29/2016, under Case No. 16-01302-DSC7, if the same parties, we must be provided with copies of the petition for Voluntary Bankruptcy, a list of creditors and the notice of intent of trustees to abandon the property and proof that there was no objection by any of the creditors. Based, on this information, we will make any further requirements necessary.

4. We will require proof that Hope Chi-Mills, are not one and the same as Hope Uan Chi-Mills ***-**-0666, who filed a petition in Bankruptcy Court under Chapter 7 of the Bankruptcy Code, said petition being dated 8/23/2017, under Case No. 17-00088-DSC, if the same parties, we must be provided with copies of the petition for Voluntary Bankruptcy, a list of creditors and the notice of intent of trustees to abandon the property and proof that there was no objection by any of the creditors. Based, on this information, we will make any further requirements necessary.

5. NOTE: For information purposes, attention is directed to the fact that the property neither appears to abut a public road or highway nor to be served by any right of way or easement over adjoining or adjacent property to any such public road or highway. We will require satisfactory proof of granted access or our policy will except: "This Policy does not insure the right of access to and from the subject property."

6. We require an affidavit and indemnity from the person(s) vested in title herein, that there are no municipal, fire district, homeowner's association dues and/or assessments outstanding or currently due on the property herein described.

7. Taxes have been Sold to the State for the year(s) of 2016-2017. Parcel Id. No. 23-1-11-3-001-007.028. We require redemption from the State of Alabama and payment in full of all due and delinquent taxes through the current tax year. The above tax information has been based on the present tax evaluation in the tax assessor's office but is subject to any adjustment that may be

made by either the Tax Assessor or the Board of Equalization of Shelby County, Alabama. This is for information only and is not an audited amount. The property owner remains responsible for all taxes regardless of the accuracy or inaccuracy of these numbers and title company accepts no responsibility for payment of taxes.

8. NOTE: All papers are to be filed in the Probate Office of Shelby County, AL.

9. If this is a purchase transaction, we require execution of an Affidavit of Residency or Exemption from Withholding Tax on Sale of Real Property by Nonresidents in compliance with Code of Alabama (1975) Section 40-18-86. If the Seller does not meet the requirement of the Affidavit of Residency or Exemption from Withholding Tax on Sale of Real Property by Nonresidents, a withholding tax will be required to be withheld from the proceeds of the sale and remitted to the Alabama Department of Revenue.

10. Satisfactory compliance with the provisions contained in Act 2012-494, regarding completion and attestation of the Real Estate Sales Validation Form.

11. We require the attached Notice of Availability of Closing or Settlement Protection to be properly completed by the seller and returned to our office.

12. We require the attached Notice of Availability of Closing or Settlement Protection to be properly completed by the borrower and returned to our office.

# TITLE INSURANCE COMMITMENT

BY

## *First American Title Insurance Company*

### SCHEDULE B - SECTION II

### EXCEPTIONS

Any policy we issue will have the following exceptions unless they are taken care of to our satisfaction.

**The Policy or Policies to be issued will contain exceptions to the following unless the same are disposed of to the satisfaction of the Company:**

1. Rights or claims of parties in possession not shown by the public records.

2. Easements or claims thereof, which are not shown by the public records.

3. Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the land.

4. Any lien, or right to a lien, for services, labor or material imposed by law and not shown by the public record.

5. Defects, liens, encumbrances, adverse claims or other matters, if any, created, first appearing in the public records or attaching subsequent to the effective date hereof but prior to the date the proposed insured acquires of record for value the estate or interest or mortgage thereon covered by this Commitment.

6. The policy does not insure against any reappraisal, assessed value adjustment, and/or escape taxes which may become due by virtue of any action of the Office of the Tax Assessor, The Office of the Tax Collector, and/or the Board of Equalization.

7. The lien of Ad Valorem taxes for the year 2018, and subsequent years. 2018 taxes are a lien but neither due nor payable until October 1, 2018.

8. Municipal improvements, taxes, assessments and fire district dues against subject property, if any.

9. Title to all oil, gas and minerals within and underlying the premises, together with all oil and mining rights and other rights, privileges and immunities relating thereto, together with any release of liability for injury or damage to persons or property as a result of the exercise of such rights, as recorded in Book 322, Page 3 and Book 322, Page 11, in the Probate Office of Shelby County, Alabama. Anything to the contrary notwithstanding, this policy, (policy to be issued if in a commitment), does not attempt to set out any ownership interest in any oil, gas, and minerals or any rights in connection therewith, and said oil, gas, and minerals interests, and all rights of entry, including the right to mine or extract such oil, gas and mineral interests are not insured. Nothing herein shall insure against loss or damage resulting from subsidence.

10. Agreement as set forth in Book 216, page 394, in the Probate Office of Shelby County, Alabama.

11. This Policy, (policy to be issued if in a commitment), does not insure the right of access to and from the subject property

# First American Title Insurance Company and/or Reli Settlement Solutions, LLC, Ala Lic #438226

**Privacy Policy Notice**
TS1800206

## PURPOSE OF THIS NOTICE

Title V of the Gramm-Leach-Bliley Act (GLBA) generally prohibits any financial institution, directly or through its affiliates, from sharing nonpublic personal information about you with a nonaffiliated third party unless the institution
provides you with a notice of its privacy policies and practices, such as the type of information that it collects about
you and the categories of persons or entities to whom it may be disclosed. In compliance with the GLBA, we are
providing you with this document, which notifies you of the privacy policies and practices of **First American Title Insurance Company** and **Reli Settlement Solutions, LLC, Ala Lic #438226**.

We may collect nonpublic personal information about you from the following sources:

> Information we receive from you such as on applications or other forms.
> Information about your transactions we secure from our files, or from our affiliates or others.
> Information we receive from a consumer reporting agency.
> Information that we receive from others involved in your transaction, such as the real estate agent or lender.

Unless it is specifically stated otherwise in an amended Privacy Policy Notice, no additional nonpublic personal information will be collected about you.

We may disclose any of the above information that we collect about our customers or former customers to our affiliates or to nonaffiliated third parties as permitted by law.

We also may disclose this information about our customers or former customers to the following types of nonaffiliated companies that perform marketing services on our behalf or with whom we have joint marketing agreements:

- Financial service providers such as companies engaged in banking, consumer finance, securities and insurance.

- Non-financial companies such as envelope stuffers and other fulfillment service providers.

WE DO NOT DISCLOSE ANY NONPUBLIC PERSONAL INFORMATION ABOUT YOU WITH ANYONE FOR ANY PURPOSE THAT IS NOT SPECIFICALLY PERMITTED BY LAW.

We restrict access to nonpublic personal information about you to those employees who need to know that information in order to provide products or services to you. We maintain physical, electronic, and procedural safeguards that comply with federal regulations to guard your nonpublic personal information.

Buyer / Borrower Initials _____      _____